**NEILSON–MORAN MARINE CORPO-
RATION, Libelant,**

v.

**UNITED STATES of America,
Respondent.**

**No. 1114.**

United States District Court
E. D. South Carolina,
Charleston Division.

March 1, 1965.

B. A. Moore, Jr., Harold A. Mouzon, Charleston, S. C., for libelant.

Thomas P. Simpson, Asst. Dist. Atty., Charleston, S. C., Wm. E. Gwatkin, III, Dept. of Justice, Washington, D. C., for respondent.

SIMONS, District Judge.

This suit, brought in admiralty against respondent, United States of America, under the Public Vessels Act, 46 U.S.C. §§ 781–790, arises out of the swamping of a cabin cruiser and a collision with a dock piling in the Intracoastal Waterway in Little River, South Carolina. Having heard this matter, and having duly considered the evidence and the arguments of counsel, I now find and conclude as follows:

### FINDINGS OF FACT

1. At all times material to this action, libelant Neilson-Moran Marine Corporation [which subsequently changed its corporate name to Jack Neilson, Inc.] was owner of the Tug MARGARET, a pusher type towboat with a length of 45.9 feet, a beam of 15.5 feet, a depth of 5.5 feet, and powered by two 165 h.p. diesel engines.

2. Respondent United States of America was at all material times owner of the Army tug ST–2198, a tugboat with a length of 65 feet, a beam of 19.5 feet, a depth of 9.5 feet, and powered by one 600 h.p. diesel engine.

3. On the evening of August 19, 1957, the Tug MARGARET was proceeding north in the Intracoastal Waterway near Little River, South Carolina, pushing the Barge CBL–1504, which was loaded with paper pulp. The barge was 195 feet in length, 35 feet in width, 9 feet in depth, and had a loaded draft of about 6 feet. The MARGARET's draft was about 5½ feet. Both the MARGARET and her barge were showing proper navigation lights. The MARGARET was being navigated by her master, Myles R. Gill, who held a motorboat operator's license issued by the Coast Guard. He was navigating this portion of the Waterway for the first time.

4. On the same evening, the Army Tug ST–2198 was southbound without a tow in the Intracoastal Waterway, proceeding from the Sunny Point Army Terminal, Southport, North Carolina, to Charleston, South Carolina. She was under command of John W. O'Daniel, Jr., a graduate of the United States Merchant Marine Academy at Kings Point, New York. He was from Southport, about 50 miles from Little River, and was quite familiar with the Intracoastal Waterway in this area.

5. At the town of Little River, South Carolina, the Intracoastal Waterway makes a slight bend to the east. The Waterway channel is 90 feet in width except at bends such as that at Little River, where it is widened to 120 feet. On the west side of the Waterway at Little River, immediately opposite the bend, are a series of docks and slips at which pleasure boats and small fishing craft are frequently moored. The face of these docks is about 60 feet from the west side of the Waterway channel. On the east bank of the Waterway, at the north end of the bend and opposite the northernmost slips, there is an aid to navigation referred to as Lighted Beacon No. 9.

6. At 9:00 p. m., on August 19, 1957, the tide was ebbing strongly at Little River at about its maximum current, which was estimated by various witnesses at from 2 to 4 knots. At this point in the Waterway, the tide ebbs northward. The Army tug was proceeding south against the tide, whereas the northbound MARGARET had the tide with her. The night was clear, and the visibility excellent.

7. About 9:00 p. m. the Tug MARGARET experienced some difficulty as she approached the east edge of the channel adjacent to Lighted Beacon No. 9. Apparently, her barge went aground causing her stern to swing westward out into the channel.

At this moment the Tug HUCK FINN which had been following the MAR-GARET for 20 to 30 miles waiting for an opportunity to pass, stopped her engines and tied up to some dolphins on the east side of the channel about ½ mile from the MARGARET.[1]

The MARGARET's stern swung halfway to the docks so as to prevent another vessel from passing between the docks and the MARGARET's stern. At this moment the Army tug approached Little River from the north and observed the MARGARET in difficulty near Beacon No. 9. The Army tug slowed down approximately 400 yards north of the MARGARET near Beacon No. 8, after observing that the MARGARET's stern was blocking passage in the channel. The MARGARET then maneuvered so as to push her stern more or less parallel to the east bank thereby clearing the channel for passage of the Army tug. The MARGARET and the Army tug then exchanged one short blast on their whistles, and the Army tug proceeded ahead at dead slow speed and passed the MARGARET and her barge to port as slowly as possible and without incident. At no time was the Army tug in collision with the dock, the cabin cruiser moored thereto, or the Tug MARGARET or her barge.

8. After the Army tug had safely passed, the MARGARET's stern again swung out into the channel, and she made a 160° turn which left her facing upstream [south] instead of downstream [north]. As she swung around in the channel, the MARGARET struck a piling near the docks on the west side of the channel and created wave wash, which swamped a cabin cruiser moored at the docks.

9. Although there is no completely adequate explanation in the record for the MARGARET's swinging across the channel, I find that it was not caused or contributed to in any way by the passage of the Army tug. There was no abnormal or unusual suction created by the

1. The Captain of the HUCK FINN was an eye witness to the following events. He testified as a witness for the government.

passage of the Army tug. The Master of the HUCK FINN, astern of the Tug MARGARET, testified that the Army tug created no noticeable suction as she passed him, and that the speed of the Army tug was insufficient to create an excessive suction. If any suction was created by the Army tug, it was insufficient to pull the MARGARET'S stern into the Waterway.

10. Although the testimony is contradictory as to whether the Army tug was showing improper navigational lights, as libelant claimed that she was showing lights indicating that she was towing a vessel astern, I find that the Army tug was showing proper navigational lights on the occasion in question. I further find that the Tug MARGARET was experiencing difficulty with her barge, and that the barge was grounded on the east bank of the channel before the Army tug had come into view on her southward passage down the Intracoastal Waterway.

11. Those on board the Army tug paid no further attention to the MARGARET after effecting a safe passage. They had no knowledge of the swamping of the cabin cruiser, or the collision with the dock until much later. The incident does not appear in the log of the MARGARET, the sole entry there reading: "9:00 p. m. aground slow down wait for tide."

12. Any damages sustained by libelant, the Tug MARGARET, her barge, the owner of the cabin cruiser, or the owners of the dock piling with which the MARGARET collided, were not caused or contributed to in any way by any act or omission of the Army tug ST–2198, or by any act or omission of the repondent United States of America, its officers, agents or employees.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter. Jurisdiction to entertain this suit against respondent, United States of America, exists by virtue of the Public Vessels Act, 46 U.S.C. §§ 781–790.

2. This is essentially a case of wave wash damage, which is governed by principles of admiralty collision law. Williamson v. The Carolina, 158 F.Supp. 417 [E.D.N.C.1958]. Even if libelant were at fault, it is entitled to bring suit in admiralty against a joint tort-feasor for contribution. The Ira M. Hedges, 218 U.S. 264, 31 S.Ct. 17, 54 L.Ed. 1039 [1910]. To recover, however, it must show not only that the respondent was a tort-feasor and at fault, but that it was itself at fault and likewise responsible for damages. Crain Brothers, Inc. v. Duquesne Slag Products Company, 273 F 2d 948 [3rd Cir. 1959].

3. The Army tug was navigated properly and with due care for the moored cabin cruiser and the dock, and it is not liable to their owners. She damaged neither the dock, nor the cabin cruiser, nor the MARGARET. She collided with no one, and it was not her wave wash that caused the alleged damage. She was navigated properly and with due care for the Tug MARGARET and her barge. The Army tug was in no way at fault. There being no liability of the United States to the cabin cruiser, the dock, or the Margaret, she cannot be a tort-feasor. Libelant, therefore, has no cause of action for contribution or otherwise, and its suit must be dismissed.

4. Libelant has failed to prove a cause of action against respondent United States, and is not entitled to recovery from respondent.

5. A final decree should be entered in favor of respondent, United States of America, and against libelant Neilson-Moran Marine Corporation [whose corporate name is now Jack Neilson, Inc.], dismissing the action herein on the merits with costs in accordance with the foregoing.